UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHMOND TRANSPORT, INC.,
MANCHIK PROPERTIES, INC., and
NORTHEAST AGGREGATE, INC.,

      Plaintiffs,

v.

THE DEPARTMENTAL OFFICE OF
CIVIL RIGHTS OF THE U.S.
DEPARTMENT OF TRANSPORTATION,
JOSEPH A. AUSTIN, MICHIGAN
DEPARTMENT OF TRANSPORTATION,
and JACQUELINE G. SHINN,

      Defendants.
_____/

Case No. 11-13771

Honorable Patrick J. Duggan

# OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_April 12, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                 U.S. DISTRICT COURT JUDGE

In this action, three Michigan businesses challenge administrative decisions denying them certification as disadvantaged business enterprises. Presently before the Court is Defendant Jacqueline Shinn's motion to dismiss the claims against her pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter has been fully briefed, and the Court heard oral argument on April 11, 2012. For the reasons set forth below, the Court grants Shinn's motion.

## I. Background

The United States Department of Transportation ("USDOT") conditions certain federal transportation funding on recipients' maintaining a disadvantaged business enterprise ("DBE") program, and has promulgated regulations defining the structure and basic characteristics of such programs. *See* 49 C.F.R. § 26.21. A DBE is a for-profit small business that is at least 51%-owned by "one or more individuals who are both socially and economically disadvantaged." *Id.* § 26.5. Certain categories of individuals are presumed to be socially and economically disadvantaged, including women and a number of ethnic groups. *Id.*

While the funding recipient is responsible for certifying businesses as DBEs, the regulations provide specific guidance on the process that should be employed. *See id.* § 26.83. If the recipient denies a firm's request for DBE certification, it must provide "a written explanation of the reasons for the denial, specifically referencing the evidence in the record that supports each reason for the denial." *Id.* § 26.86(a). The firm may appeal the denial to USDOT. *Id.* § 26.86(d).

If a firm appeals the denial of certification, USDOT requests a copy of the recipient's administrative record in the matter and makes its decision solely on that record. *See id.* § 26.89. USDOT affirms if the recipient's decision is supported by substantial evidence and is consistent with the regulations' substantive and procedural provisions. *Id.* § 26.89(f)(1). If the recipient's decision is not supported by substantial evidence or is inconsistent with the regulations, USDOT may direct the recipient to certify the firm, and the recipient is required to "take the action directed by [USDOT's] decision immediately upon receiving

written notice of it." *Id.* § 26.89(f)(2). Alternatively, if the record is unclear with respect to a significant matter, USDOT may remand for further proceedings. *Id.* § 26.89(f)(4). USDOT's decision is administratively final. *Id.* § 26.89(g).

Richmond Transport, Inc. ("Richmond"), Manchik Properties, Inc. ("Manchik Properties"), and Northeast Aggregate, Inc. ("Northeast Aggregate") (collectively, "Plaintiffs") are three Michigan corporations doing business in the construction industry. These three businesses are related. Richmond hauls aggregate materials such as crushed rock, gravel, and sand to construction sites. Northeast Aggregate purchases and provides aggregate materials for Richmond's customers. Richmond leases trucks and construction equipment from Manchik Properties.

These three interrelated businesses were at one time owned by Francis Manchik and his wife, Patricia Manchik. Through a series of transactions occurring between 1999 and 2004, the couple transferred ownership of these businesses to their four children: Daniel Manchik, Cindy Manchik, Jody Smith, and Rhonda Perry. The couple's children had been employed by these businesses for a number of years prior to obtaining ownership.

In May 2010, Plaintiffs filed applications for DBE certification with the Michigan Department of Transportation ("MDOT"). MDOT subsequently performed an on-site review at Plaintiffs' offices. MDOT's Chief Deputy Director, Defendant Shinn, issued letters denying Plaintiffs' applications on September 28 and 30, 2010. MDOT's decisions indicated that Plaintiffs failed to meet eligibility standards concerning control by disadvantaged individuals and independence from non-DBE firms. Among other evidence, the decisions noted that Daniel Manchik had been president of all three firms

until March 2010.  The only reason that had been given for his replacement as president was to gain DBE certification.  The decisions also noted that Daniel Manchik had more direct field expertise and knowledge of the businesses' operations, while his sisters were engaged primarily in administrative functions.  Finally, Daniel Manchik and several other non-disadvantaged employees were paid more than Cindy Manchik, Jody Smith, and Rhonda Perry.  MDOT denied DBE certification, concluding that it could not determine that Plaintiffs were controlled by the disadvantaged owners.

Plaintiffs filed appeals with USDOT on December 15, 2010.  In a decision issued on September 6, 2011, USDOT concluded that substantial evidence supported the decision to deny DBE certification.  Plaintiffs responded by filing this action, naming as Defendants USDOT, MDOT, Shinn, and Joseph Austin, the official who issued USDOT's decision.

Plaintiffs Amended Complaint[1] raises four claims.  Count I, brought against USDOT, challenges USDOT's decision under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*.  Count II, brought against all Defendants, requests a declaratory judgment establishing Plaintiffs' entitlement to DBE certification.  Count III, brought against MDOT and Shinn, asserts violations of Plaintiffs' due process and equal protection rights under the Fourteenth Amendment to the United States Constitution.  Count IV, brought against USDOT and Austin, also asserts violations of due process and equal protection rights.

---

[1]The original Complaint was filed before USDOT issued its decision, and included a count seeking to compel USDOT to process Plaintiffs' appeals.  Once USDOT issued its decision, however, Plaintiffs amended the Complaint by substituting for that count a new count challenging USDOT's decision.

4

On November 4, 2011, Plaintiffs voluntarily dismissed the claims against MDOT pursuant to Federal Rule of Civil Procedure 41. Shinn has now moved to dismiss the claims against her pursuant to Rule 12(b)(6).

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

## III. Discussion

### A. Count II, Declaratory Relief

Plaintiffs seek entry of a declaratory judgment establishing that they are entitled to DBE certification. Shinn argues that Plaintiffs lack standing to assert a claim against her because a favorable decision would not redress their injury. Article III standing requires: (1) an actual and particularized injury in fact; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561, 112 S. Ct. at 2136.

Plaintiffs cannot show that their injuries will be redressed through a claim against Shinn. The regulations plainly establish that USDOT's decision is binding upon MDOT. *See* 49 C.F.R. § 26.91(a) ("If you are the recipient from whose action an appeal under § 26.89 is taken, the decision is binding.") The regulations provide that the recipient "must"

6

act in accordance with USDOT's decision. *Id.* § 26.91(b). Overturning MDOT's decision will not afford Plaintiffs any real relief, because USDOT's decision is "administratively final." *See id.* § 26.89(g). Plaintiffs may only obtain DBE certification by overturning USDOT's binding decision. Moreover, Sixth Circuit precedent does not favor declaratory relief where it would not settle the controversy at hand or where a more effective remedy is available. *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007). Because USDOT's decision is binding, reversal of MDOT's decision would serve no meaningful purpose in this litigation. Plaintiffs' APA claim under Count I provides a much more effective remedy, as it addresses USDOT's decision. The Court believes that these circumstances do not call for declaratory relief. Count II must be dismissed.

Plaintiffs argue that if USDOT's decision were reversed, it would still be necessary for the Court to order MDOT to grant DBE certification to Plaintiffs. They are mistaken. If USDOT's decision is reversed, MDOT, as recipient, "must" take immediate action in accordance with that decision. *See* 49 C.F.R. § 26.91(b). This would include certifying Plaintiffs as DBEs. *See id.* § 26.89(f)(2). Plaintiffs also request to be included in the directory of DBEs. Presumably, MDOT would be required to take the necessary steps to update this directory as part of the DBE certification process, and no further order from this Court would be required. The Court concludes that Defendant Shinn's presence in this case is not essential, even if Plaintiffs ultimately prevail in their claims.

### B. Count III, Civil Rights Violations

Plaintiffs also assert a claim pursuant to 42 U.S.C. § 1983 for alleged violations of

7

their due process and equal protection rights. They assert this claim against Shinn in her official and individual capacities, seeking declaratory, injunctive, and monetary relief.

Shinn contends that the official-capacity claim for damages is barred, and the Court agrees. The Eleventh Amendment to the United States Constitution bars suits for damages brought against state officials in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989).

Shinn asserts that she is entitled to qualified immunity with respect to the individual-capacity claim for damages. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). To resolve a qualified immunity claim, the Court must determine if: (1) the plaintiff has alleged facts making out the violation of a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 232, 129 S. Ct. at 815-16. The Court may exercise its discretion in determining which of the two prongs of this analysis to address first. *Id.* at 236, 129 S. Ct. at 818. "When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008)).

*1. Due Process*

Plaintiffs' Amended Complaint does not make clear whether the alleged due process violation relates to substantive or procedural due process rights. The Court accordingly examines both alternatives to determine whether Plaintiffs have stated a plausible claim.

Plaintiffs have not alleged facts that would constitute a violation of their procedural due process rights. "The right to procedural due process 'requires that when a State seeks to terminate [a protected] interest . . . it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective.'" *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 570 n.7, 92 S. Ct. 2701, 2705 n.7 (1971)) (alterations in original). "[P]rocedural due process rights are only violated when a protected liberty or property interest is denied without adequate hearing." *Id.* There is some authority suggesting that DBE certification may be a protected property interest, at least in the context of renewal of an existing DBE certification. *See N. Am. Group, Inc. v. County of Wayne*, 106 F.3d 401, 1997 U.S. App. LEXIS 1715, at *14-15 (6th Cir. Jan. 28, 1997) (table); *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 676-77 (7th Cir. 1987). Yet even assuming that initial DBE certification is a protected property interest, Plaintiffs received all the process they were due. The Supreme Court has set forth three factors to consider in evaluating the adequacy of administrative procedures afforded by the government: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903

(1976). Plaintiffs allege that they would have earned additional income if they had been granted DBE certification, Am. Compl. ¶ 62, but they have failed to plead facts indicating that the process afforded here created a meaningful risk of error. MDOT conducted an on-site review at Plaintiffs' offices and allowed the submission of extensive documentation in support of Plaintiffs' application. Moreover, Plaintiffs were given a written explanation of the specific reasons for denial of their application and were able to appeal this decision with the assistance of counsel. Plaintiffs have not identified any deficiency in this process that would tend to result in an erroneous determination. Plaintiffs point to their concerns raised on appeal, but those arguments were in no way related to the process itself.[2] Rather, Plaintiffs disputed the correctness of the decision and took issue with the weight given to certain evidence. Plaintiffs were afforded the procedural protections required by USDOT regulations, *see* 49 C.F.R. § 26.83, and this sort of DBE certification process has been held to comport with procedural due process standards. *See N. Am. Group, Inc.*, 1997 U.S. App. LEXIS 1715, at *15; *Baja Contractors, Inc.*, 830 F.2d at 679.

Plaintiffs have also failed to allege facts that would establish a violation of their substantive due process rights. "'Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used.'" *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th

---

[2] Although the pleadings only include Richmond's appeal, *see* Am. Compl. Ex. E, the remaining Plaintiffs' appeals are referred to in the Amended Complaint, and are therefore properly considered by the Court in evaluating Shinn's Rule 12(b)(6) motion.

10

Cir. 1996)) (omission in original). "'Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.'" *Id.* (quoting *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)).

It is not apparent that DBE certification implicates any particular constitutional guarantee. "The interests protected by substantive due process are . . . much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003). Such interests are limited to fundamental rights and liberties "'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 2268 (1997) (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503, 97 S. Ct. 1932, 1938 (1977)). The Court cannot see any basis for concluding that DBE certification is a right of this magnitude.

The Court also considers the second form of substantive due process claim, in which the plaintiff asserts that the conduct complained of "shocks the conscience." "Where a substantive due process attack is made on state administrative action, the scope of review by the federal courts is extremely narrow." *Pearson v. Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992). "[A] plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the strict sense, meaning 'that there is no rational basis for the administrative decision.'" *Id.* (quoting *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981)). Put differently, "[t]he administrative action will withstand substantive due process attack unless it 'is not supportable on any rational basis' or is 'willful and unreasoning action, without consideration and in disregard of the facts or

11

circumstances of the case.'" *Id.* (quoting *Greenhill v. Bailey*, 519 F.2d 5, 10 n.12 (8th Cir. 1975)).

Plaintiffs' conclusory assertion that the denial of their applications was "arbitrary and capricious," *see* Am. Compl. ¶ 59, is simply inadequate to establish a plausible due process claim. A review of MDOT's decision reveals ample factual support and reasoning. After considering the skills, experience, compensation, and duties of Plaintiffs' owners, MDOT concluded that Daniel Manchik, rather than the disadvantaged owners, appeared to be controlling Plaintiffs. Plaintiffs dispute the weight given to certain facts in MDOT's analysis and argue that some facts support DBE certification, but that is not the benchmark for a substantive due process claim. Plaintiffs' due process challenge amounts to a mere disagreement with MDOT's decision. This decision does not appear to have been made irrationally or in disregard of the facts. Given the "extremely narrow" scope of review applied by federal courts in such circumstances, *see Pearson*, 961 F.2d at 1211, the Court concludes that Plaintiffs have failed to plead a plausible substantive due process claim.

### 2. Equal Protection

Plaintiffs allege that the denial of their applications for DBE certification constituted a violation of their equal protection rights. Am. Compl. ¶ 61. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C.*, 641 F.3d at 681 (6th Cir. 2011). Plaintiffs' brief makes clear that they are asserting the third type of claim, based on

a "class of one" theory. To prevail on such a claim, the plaintiff must show that another person who is similarly situated "in all relevant respects" was treated differently, and "that the adverse treatment . . . was 'so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* at 682 (quoting *Warren v. City of Athens*, 411 F.3d 697, 710-11 (6th Cir. 2005)). "This showing is made either by negativing every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will." *Id.*

Plaintiffs have failed to identify a firm that was similarly situated in all relevant respects and was treated differently. Plaintiffs argue that any female-owned business certified by MDOT since the inception of the DBE program is similarly situated. Their logic is unavailing, because it assumes that which Plaintiffs are required to establish. The Court cannot assume that Plaintiffs suffered adverse treatment simply because other firms were granted DBE certification. As for Plaintiffs' unsupported assertion that any other applicant would not have suffered the "abusive misapplication of 49 C.F.R. Part 26 that Plaintiffs have suffered," Pls.' Br. 9, this is mere speculation and cannot give rise to a plausible equal protection claim. Contrary to Plaintiffs' assertion, the reasoning stated in their appeals does not discredit every conceivable reason for MDOT's decision. Plaintiffs offer a conflicting interpretation of the evidence, but this does not show that MDOT's analysis is irrational or unworthy of credence.

As Plaintiffs have failed to allege facts making out the violation of a constitutional right, the Court concludes that Shinn is entitled to qualified immunity with respect to the

individual-capacity claim for damages.

Plaintiffs also seek declaratory and injunctive relief with respect to their due process and equal protection claims. Specifically, they request a declaration that Shinn's actions in denying their applications violated Plaintiffs' due process and equal protection rights, as well as injunction requiring Shinn to grant Plaintiffs DBE certification. Because Plaintiffs have failed to plead facts making out a violation of their constitutional rights, they are not entitled to the requested declaratory and injunctive relief.

## C. Violation of Federal Regulations

Plaintiffs assert that they have stated a plausible claim under § 1983 for violation of federal regulations. The Court disagrees. "[F]ederal regulations cannot themselves create a cause of action; that is a function of the legislature." *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993). Thus, "the statute must be examined to determine if an implied private right of action can be found." *Id.* The regulations at issue were authorized by the Transportation Equity Act for the 21st Century ("TEA-21"), Pub. L. 105-178, Tit. I, § 1101(b)(1), 112 Stat. 107 (1998). *See Adarand Constructors v. Mineta*, 534 U.S. 103, 106, 122 S. Ct. 511, 512 (2001). TEA-21 authorized federal funding of highway projects by states and localities, and there is no indication that Congress intended to create a private right of action for individuals seeking to enforce provisions of the law. In addition to appeal rights, the regulations implementing TEA-21 provide an administrative remedy for enforcement if a person believes that a recipient of federal transportation funds has failed to comply with the provisions of 49 C.F.R. Part 26. *See* 49 C.F.R. § 26.103. There is no reason to imply a private right of action where such remedies are available. The Court

14

therefore concludes that the alleged regulatory violations do not give rise to a cause of action under § 1983.

### IV. Conclusion

For the reasons set forth above, the Court concludes that Plaintiffs' claims against Defendant Jacqueline Shinn must be dismissed pursuant to Rule 12(b)(6). Because Shinn was the only remaining Defendant against whom Count III was asserted, this Count is dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that Defendant Jacqueline Shinn's motion to dismiss the claims against her pursuant to Rule 12(b)(6) is **GRANTED**;

**IT IS FURTHER ORDERED** that Shinn is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Count III, "Civil Rights Violation by Defendants MDOT and Shinn," is **DISMISSED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Michael J. Leavitt, Esq.
Gregory DeGraff, Esq.
Michael J. Dittenber, A.A.G.
Laura A. Sagolla, A.U.S.A.