UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHMOND TRANSPORT, INC.,
MANCHIK PROPERTIES, INC., and
NORTHEAST AGGREGATE, INC.,

    Plaintiffs,

v.

Case No. 11-13771
Honorable Patrick J. Duggan

THE DEPARTMENTAL OFFICE OF
CIVIL RIGHTS OF THE U.S.
DEPARTMENT OF TRANSPORTATION,
JOSEPH A. AUSTIN, MICHIGAN
DEPARTMENT OF TRANSPORTATION,
and JACQUELINE G. SHINN,

    Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this action, three Michigan businesses – Richmond Transport, Inc. ("Richmond"), Manchik Properties, Inc. ("Manchik Properties"), and Northeast Aggregate, Inc. ("Northeast") (collectively, "Plaintiffs") – challenge administrative decisions denying each company status as a disadvantaged business enterprise ("DBE") pursuant to a regulatory scheme defining the structure and basic characteristics of such entities. *See* 49 C.F.R. Part 26. Plaintiffs' Amended Complaint requests judicial review of the United States Department of Transportation's ("DOT") decision to affirm the denial of DBE certification under the under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, alleging that the denial of Plaintiffs' administrative appeals was arbitrary

and capricious. Plaintiffs' Amended Complaint also asserts violations of Plaintiffs' due process and equal protection rights. Presently before the Court are Plaintiffs' Motion for Partial Summary Judgment under the APA and Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons elucidated herein, Plaintiffs' motion is denied and Defendants' motion is granted.

## I. BACKGROUND

### A. Regulatory Scheme

DOT conditions certain federal transportation funding on recipients' maintaining a disadvantaged business enterprise ("DBE") program, and has promulgated regulations defining the structure and basic characteristics of such programs. *See* 49 C.F.R. § 26.21. A DBE is a for-profit small business that (1) is at least 51%-owned by "one or more individuals who are both socially and economically disadvantaged[,]" and (2) "[w]hose management and daily business operations are controlled by one or more of the socially and economically disadvantaged individuals who own it." *Id.* § 26.5. Certain categories of individuals are presumed to be socially and economically disadvantaged, including women and a number of ethnic groups. *Id.* §§ 26.61(c), 36.67(a)(1).

The DBE program regulations provide a host of requirements for the administration of the program, including eligibility standards for DBE certification and procedures for determining whether an applicant firm is both owned and controlled by disadvantaged individuals. Initial DBE-eligibility determinations are made by recipients, here, the Michigan Department of Transportation ("MDOT"), but the regulations provide appropriate guidance on the process that should be employed. *See id.* § 26.83.

2

The regulations place the burden on the firm seeking certification to demonstrate that it meets the requirements concerning ownership and control by a preponderance of the evidence. *Id.* § 26.61(b). In determining the ownership and control issues, the recipient "must consider all the facts in the record, viewed as a whole." *Id.* §§ 26.69(a) and 26.71(a). Moreover, in assessing whether a potential DBE satisfies the eligibility standards, the recipient must take certain steps, including an on-site visit to the applicant's offices, interviewing the firm's principal officers, and reviewing the resumes and work histories of these officers. *Id.* § 26.83(c).

If the recipient denies a firm's request for DBE certification, it must provide "a written explanation of the reasons for the denial, specifically referencing the evidence in the record that supports each reason for the denial." *Id.* § 26.86(a). The firm may appeal the denial to DOT. *Id.* § 26.86(d). If a firm appeals the denial of certification, DOT requests a copy of the administrative record and renders a decision to affirm or remand based on its review of the entire administrative record. *See id.* § 26.89(e). DOT must affirm the recipient's decision if it is supported by substantial evidence and is consistent with the regulations' substantive and procedural provisions. *Id.* § 26.89(f)(1). If the recipient's decision is not supported by substantial evidence or is inconsistent with the regulations, DOT may direct the recipient to certify the firm, and the recipient is required to "take the action directed by [DOT's] decision immediately upon receiving written notice of it." *Id.* § 26.89(f)(2). Alternatively, if the record is unclear with respect to a significant matter, DOT may remand for further proceedings. *Id.* § 26.89(f)(4). DOT's decision is administratively final. *Id.* § 26.89(g).

**B.     The Parties**

Richmond, Manchik Properties, and Northeast are three Michigan corporations engaged in the trucking and sale of aggregate products. *See* Administrative Record ("A.R.") at 55, 1455, 1694. These businesses are related. Richmond hauls aggregate materials such as crushed rock, gravel, and sand to construction sites. *See, e.g.*, *id.* at 20, 1297. Northeast purchases and provides aggregate materials for Richmond's customers. *See, e.g.*, *id.* at 1298. Richmond leases trucks and construction equipment from Manchik Properties, as well as non-parties Cindy Manchik, L.L.C., Daniel Manchik, Inc., and Daniel Manchik Equipment, Inc. *See, e.g.*, *id.* at 9, 68, 1299-1301.

These three interrelated businesses were at one time owned by Francis Manchik and his wife, Patricia Manchik. *Id.* at 2-4. Through a series of transactions occurring between 1999 and 2004, the couple transferred ownership of these businesses to their four children, Daniel Manchik, Cindy Manchik, Jody Smith, and Rhonda Perry, each of whom had been employed by these businesses for a number of years prior to obtaining ownership. *Id.* at 2-4, 21, 55, 1455, 1694. The three sisters each own 24.8% of Richmond and Manchik Properties, while their brother owns 25.6% of both firms. *Id.* at 20, 28. Each sibling owns 25% of Northeast. *Id.* at 1697.

**C.     The Certification Applications**

Plaintiffs filed applications for DBE certification with MDOT in May 2010. MDOT subsequently performed an on-site review at Plaintiffs' offices. MDOT's Chief Deputy Director issued letters denying Plaintiffs' applications on September 28 and 30, 2010. MDOT's decisions indicated that Plaintiffs failed to meet eligibility standards

4

concerning control by disadvantaged individuals and independence from non-DBE firms. *See id.* at 36-39. Among other evidence, the decisions noted that Daniel,[1] a non-disadvantaged individual, had been President and sole director of Richmond and Manchik between September 1999 and March 2010, and served as President and sole director of Northeast between June 2004 and March 2010. (Defs.' Br. in Supp. of Mot. for Summ. J. 4.) In March 2010, two months before Plaintiffs applied for DBE certification, Jody replaced Dan as the President and sole Director of Richmond, Manchik, and Northeast. (*Id.*) When MDOT inquired about the reasons for the change in management structure, the responses from the four owners uniformly referenced the desire to gain DBE certification. *See* A.R. at 1293-94. MDOT's decisions also noted that Daniel had more direct field expertise and knowledge of the businesses' operations, while his sisters were engaged primarily in administrative functions. *Id.* at 37-38. Finally, Daniel and several other non-disadvantaged employees were paid more than Cindy, Jody, and Rhonda. *Id.* at 37. MDOT denied DBE certification, concluding that it could not determine that Plaintiffs were independent and controlled by the disadvantaged owners. *Id.* at 39.

**D.     DOT Affirms MDOT on Appeal and Plaintiffs File the Instant Action**

Plaintiffs filed appeals with DOT on December 15, 2010. In a decision issued on September 6, 2011, DOT concluded that substantial evidence supported the decision to deny DBE certification. *See id.* at 1-16. Plaintiffs responded by filing this action,

---

[1] The Court uses the given names of the individual owners so as to avoid confusing the various business entities and individuals.

naming as Defendants DOT, MDOT, Shinn, and Joseph Austin, the official who issued DOT's decision, on October 21, 2011.

Plaintiffs Amended Complaint asserts four claims, of which three remain.[2] Count I, brought against DOT, challenges DOT's decision under the APA, 5 U.S.C. § 701 *et seq*. Count II requests a declaratory judgment establishing Plaintiffs' entitlement to DBE certification. Count IV, brought against DOT and Austin, asserts violations of Plaintiffs' due process and equal protection rights.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56 instructs district courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012). The initial burden of proving the absence of a genuine dispute rests with the movant, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), who "must support the assertion by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[,]" Fed. R. Civ. P. 56(c)(1)(A)-(B). While this inquiry requires the Court to construe factual disputes, and the inferences there from, in the light most favorable to the non-moving

---

[2] On November 4, 2011, Plaintiffs voluntarily dismissed the claims against MDOT pursuant to Federal Rule of Civil Procedure 41. Thus, when the Court granted Defendant Shinn's motion to dismiss in an Opinion and Order dated April 12, 2012, Count III was dismissed in its entirety. As a result of these procedural steps, the only remaining Defendants are DOT and Austin.

party, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

If the moving party discharges their initial burden, the burden of defeating summary judgment shifts to the non-movant who must point to specific material facts – beyond the pleadings or mere allegation – which give rise to a genuine issue of law for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514. A mere scintilla of evidence supporting the non-movant's claim will not prevent summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

"Summary judgment is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency." Charles A. Wright, *Federal Practice and Procedure* § 2733 (3d ed. 1998). This is because such cases generally involve a determination of whether the agency misapplied the law or ignored record evidence rather than the resolution of factual issues. *Id.*

B.   **Administrative Procedure Act**

Plaintiffs seek review of DOT's decision pursuant to the APA. A court examining agency action pursuant to 5 U.S.C. § 706 does not conduct a *de novo* review. Rather, "the focal point for judicial review should be the administrative record[.]" *Camp v. Pitts*, 411 U.S. 138, 142, 93 S. Ct. 1241, 1244 (1973). A reviewing court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). As this language suggests, a court's

7

review of agency action is highly deferential and a court should not substitute its judgment for that of the agency. *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866 (1983). This is because the judiciary has long recognized that an agency's interpretation of its own regulations is entitled to substantial deference. *See, e.g.*, *United States v. Larinoff*, 431 U.S. 864, 872, 97 S. Ct. 2150, 2155 (1977).

When evaluating agency action, a court must be satisfied that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicles Mfrs.*, 463 U.S. at 43, 103 S. Ct. at 2866 (citation omitted). This analysis necessarily entails a "thorough, probing, in-depth review" of the administrative record to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16, 91 S. Ct. 814, 823-24 (1971).

### III.  APPLICATION

#### A.  Plaintiffs' APA Claim

In its decision, DOT did not dispute that three women, Cindy, Jody, and Rhonda, own over 51% of each Plaintiff firm. Rather, DOT focused its analysis on the question of whether the three female owners had "control" over the firms and whether the firms were sufficiently "independent" to qualify as DBEs. Ultimately, DOT concluded that that MDOT's "denial of Northeast, Manchik, and Richmond as eligible [DBEs] . . . is supported by substantial evidence." *See* A.R. at 1.

The DBE regulations provide guidance as to whether socially and economically disadvantaged owners "control" the firm seeking DBE certification. *See generally* 49 C.F.R. § 26.71. One such regulation provides:

> Where a firm was formerly owned and/or controlled by a non-disadvantaged individual (whether or not an immediate family member), ownership and/or control were transferred to a socially and economically disadvantaged individual, and the non-disadvantaged individual remains involved with the firm in any capacity, the disadvantaged individual now owning the firm must demonstrate to you, *by clear and convincing evidence*, that:
>
> (1) The transfer of ownership and/or control to the disadvantaged individual was made for reasons other than obtaining certification as a DBE; and
>
> (2) The disadvantaged individual actually controls the management, policy, and operations of the firm, notwithstanding the continuing participation of a non-disadvantaged individual who formerly owned and/or controlled the firm.

49 C.F.R. § 26.71(l) (emphasis added). This regulation is pertinent to the instant case because Daniel, a non-disadvantaged individual, served as President and sole director of all three firms until March 2010, when Jody was elected to replace Daniel in this capacity. *See* A.R. at 37-38. After this change, Daniel remained involved with the firm. *Id.* Given these circumstances, Plaintiffs shouldered the burden of demonstrating, by clear and convincing evidence, that (1) the transfer of control was motivated by considerations other than obtaining DBE status and (2) that the three women actually controlled the firms' management, policy, and operations. 49 C.F.R. § 26.71(l).

MDOT's denial of Plaintiffs' DBE certification applications explained that certain evidence gathered during the on-site review process raised eligibility concerns pursuant

9

to this regulation.  Among other evidence, MDOT's decision noted that Daniel served as President and sole director of each firm until March 2010.  *See* A.R. at 37-38; *see also id.* at 10.  The only reason given during the on-site interview for Daniel's replacement was to gain DBE certification.  *Id.* at 38, 1293-94.  This caused obvious eligibility concerns with respect to 49 C.F.R. § 26.71(l)(1).

In appealing MDOT's decision, Plaintiffs attached an affidavit from Jody providing an additional explanation for the organizational change.  Jody indicated that "[o]ver the last several years, Richmond's business has required Daniel [] to spend more and more time in the field.  This made it difficult for him to carry out his duties as President.  As a result, the owners agreed that I should become President, allowing Daniel more time in the field."  (12/14/2010 Aff. of Jody Smith, Pls.' Resp. to Defs.' Mot. Summ. J., Ex. A.)  Despite the affidavit, DOT affirmed MDOT's determination that the change in control was driven by a desire to gain DBE certification.  A.R. at 13-14.

Plaintiffs argue that the affidavit provides other reasons for change of control beyond DBE certification and that DOT therefore acted arbitrarily in affirming MDOT on this ground.[3]  (Pls.' Resp. to Defs.' Mot. Summ. J. 7.)  The Court disagrees.  Recalling that DOT must affirm a recipient's decision if supported by substantial evidence and consistent with the regulations, 49 C.F.R. § 26.89(f)(1), the Court finds that there is sufficient evidence in the administrative record that the four owners agreed that the transfer of control from Dan to Jody was to obtain DBE certification.  The evidence

---

[3] Plaintiffs also argue that DOT acted arbitrarily "when it chose to ignore" the affidavit. (Pls.' Resp. to Defs.' Mot. Summ. J. 7.)  However, Plaintiffs indicate in the previous paragraph that "[t]his affidavit was received and considered by" DOT.  (*Id.*)

acquired from the owners during MDOT's on-site interview is rather telling. When asked to explain the change in directors and Presidents, Jody explained "[w]hen we realized that we could qualify for a DBE that would benefit our customers, we decided it was in the best interest of the company that Jody, Cindy and Rhonda be the sole owners." A.R. at 1293. In responding to the same inquiry, Cindy indicated that "[r]ealizing that our companies fit the criteria for DBE certification, we felt it would be beneficial to have the [three] women hold the offices." *Id.* at 1294. Daniel responded by saying that he "[t]hought it would be helpful in applying for DBE." *Id.* In a statement that only strengthens the finding that the change was motivated by obtaining DBE status, Rhonda explained that the owners "decided to apply for our DBE status" in February, which explained why the owners believed "it would be in our best interest" to effectuate a change in control in March 2010. *Id.*

While Plaintiffs did "articulate" an alternative explanation for the change in support of their appeal to DOT, (Pls.' Br. in Supp. Mot. Partial Summ. J. 15), Plaintiffs' *post-hoc* rationalization does not satisfy the clear and convincing evidence standard set forth in the regulation. The fact that the only proffered explanations for the change at the time of the on-site interview invoked DBE certification provides the requisite evidence to affirm DOT's affirmance of MDOT's decision. While Plaintiffs argue that other considerations also motivated the change in control, because Plaintiffs shouldered the burden of demonstrating that they satisfy all regulatory criteria for certification, including business size, disadvantaged status of owners, ownership, and control by at least a preponderance of the evidence pursuant to 49 C.F.R. § 26.61(b), the Court notes that

11

Plaintiffs were obligated to present all relevant facts to MDOT that would demonstrate eligibility.  *See* A.R. at 15.

Having reviewed the evidence before DOT, and remaining mindful that the Court is not free to substitute its opinion for that of the reviewing agency, *Motor Vehicles Mfrs.*, 463 U.S. at 43, 103 S. Ct. at 2866, the Court finds that DOT's determination that the disadvantaged owners lacked control over Plaintiffs pursuant to 49 C.F.R. § 26.71(l) was neither arbitrary nor capricious.  The Court concludes that DOT's written decision adequately reflects its "examin[ation of] the relevant data and articulate[s] a satisfactory explanation for its action."  *Id.*

Accordingly, the Court need not examine DOT's determinations  (1) that Plaintiffs were not sufficiently independent to satisfy 49 C.F.R. § 26.71(b) due in part to "[t]he dependence of Richmond [] on Daniel['s ] two firms for its trucking needs[,]" which also caused control concerns under 49 C.F.R. § 27.61(m), (2) that the difference in remuneration between Daniel and the three disadvantaged owners undermined a finding that the latter sufficiently controlled the firms pursuant to 49 C.F.R. § 26.71(i)(2), and (3) that the disadvantaged owners lacked the requisite "understanding of, and managerial and technical competence and experience directly related to, the type of business in which the firm is engaged and the firm's operations[,]" as required by 49 C.F.R. § 26.71(g). A.R. at 1-16; *Beach Erectors, Inc. v. U.S. Dep't of Transp.*, No. 10-5741, 2012 U.S. Dist. LEXIS 127632, at *33 (E.D.N.Y. Sept. 7, 2012) (unpublished) (explaining that DOT's decision to deny DBE certification "must be upheld if the decision can be sustained on any of the three determinative issues") (citing *Shearin Construc., Inc. v. Mineta*, 232 F. Supp. 2d

608, 615 (E.D. Va. 2002)); *Grove, Inc. v. U.S. Dep't of Transp.*, 578 F. Supp. 2d 37, 47 (D.D.C. 2008) ("Because there is substantial evidence in the administrative record supporting one of the grounds for denying The Grove certification in the [DBE] Program . . . , The Grove's claim under the [APA] fails."). Plaintiffs' arguments regarding the alternative grounds for denying DBE certification lack merit. Moreover, even if Plaintiffs are correct in asserting that DOT abused its discretion when it affirmed MDOT's decision on grounds allegedly not cited by the state agency, (Pls.' Br. in Supp. Mot. Partial Summ. J. 15-16 (citing 49 C.F.R. § 21.89(f)(5)), 5 U.S.C. § 706 requires reviewing courts to "review the whole record" and take "due account . . . of the rule of prejudicial error." Insofar as the Court finds that DOT must be affirmed on its change in control determination, whether it was error for the agency to construe MDOT's family-control finding pursuant to 49 C.F.R. § 26.71(k) as a finding regarding managerial and technical competence as delineated in 49 C.F.R. § 26.71(g) is irrelevant to the ultimate disposition of the instant dispute.

On the basis of the foregoing, the Court has determined that Plaintiffs' Motion, which seeks summary judgment on Count I, must be denied because Defendants have demonstrated that they are entitled to summary judgment on this Count. In a related vein, Plaintiffs seek entry of a declaratory judgment establishing that they are entitled to DBE certification. Because the Court does not believe that DOT violated the APA, the Court also dismisses Count II.[4]

---

[4] Even if the Court determined that DOT's action violated the APA, "the proper course is for the action, findings, and conclusions to be vacated, then remanded to the agency for

13

### B.     Plaintiffs' Civil Rights Claims

Plaintiffs also assert a claim pursuant to 42 U.S.C. § 1983 for alleged violations of their due process and equal protection rights. They assert these claims against DOT and Defendant Austin, Associate Director of the External Civil Rights Programs at DOT.

According to Plaintiffs, DOT deprived Plaintiffs of due process when it "affirmed MDOT in determinations unsupported by the regulations, and then itself violated the regulation." (Pls.' Resp. to Defs.' Mot. Summ. J. 16.) More specifically, Defendant Austin, Associate Director of the External Civil Rights Programs at DOT, and DOT's "failure to act upon the Plaintiffs' timely filed appeals . . . is contrary to established statutes and regulations enacted to protect Plaintiffs' civil rights." (Am. Compl. ¶¶ 65-66.) When action was finally taken, DOT violated its regulations "by making a de novo review and addressing issues not raised by MDOT." (*Id.* ¶ 67.) The delay and claimed statutory and regulatory violations "abridged Plaintiffs' right to due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution."[5] (*Id.* ¶ 68.) As a

---

further administrative proceedings consistent with the court's opinion." *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658, 127 S. Ct. 2518, 2529 (2007) (citation omitted).

[5] The Court notes that Plaintiffs' due process and equal protection claims against Defendants must be brought under the Fifth, rather than the Fourteenth Amendment. *See, e.g.*, *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21, 107 S. Ct. 2971, 2983 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State. . . . The Fifth Amendment, however, does apply to the Federal Government."). However, the Court analyzes the claim because "[t]o suppose that 'due process of law' meant on thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection." *Malinski v. New York*, 324 U.S. 401, 415, 65 S. Ct. 781, 788 (1945) (Frankfurter, J., concurring). Similarly, "[t]he Fifth Amendment contains an equal protection component[,]" *U.S. Olympic Comm.*, 483 U.S. at 542 n.21, 107 S. Ct. at 2983 n.21, and the Supreme Court's "approach to Fifth Amendment equal protection claims

result, "Plaintiffs have suffered and will continue to suffer substantial damages." (*Id.* ¶ 69.) Plaintiffs seek declaratory, injunctive, and monetary relief.

To the extent that Plaintiffs seek damages, principles of sovereign immunity preclude such relief. As sovereign, the United States is immune from suit unless it clearly consents to be sued, thus waiving its immunity. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 770-71 (1941) (citations omitted). Administrative agencies, such as DOT, are immune from actions seeking damages arising from an agency's alleged violation of a plaintiff's constitutional rights. *Fed. Deposit Insur. Corp. v. Meyer*, 510 U.S. 471, 486, 114 S. Ct. 996, 1005 (1994). Although the Supreme Court has established a cause of action for monetary damages against federal officials in their individual capacities for violations of constitutional rights, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), Defendant Austin is named in his official capacity, (Am. Compl. ¶ 65). Defendants are therefore entitled to summary judgment with respect to the damages sought in Count IV.

*1.     Due Process*

Notwithstanding sovereign immunity, Plaintiffs have not articulated a due process violation. Plaintiffs' Amended Complaint does not make clear whether the alleged due process violation relates to substantive or procedural due process rights. However, in responding to Defendants' Motion, Plaintiffs use the language of procedural due process.

---

has been precisely the same as to equal protection claims under the Fourteenth Amendment[,]" *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2, 95 S. Ct. 1225, 1228 n.2 (1975).

(Pls.' Resp. to Defs.' Mot. Summ. J. 17 ("Plaintiffs have a property interest in obtaining DBE certification.") ("[]DOT did not afford Plaintiffs adequate procedural rights[.]").)

Plaintiffs have not alleged facts nor indicated in response that they could produce evidence that would amount to a procedural due process violation. "The right to procedural due process 'requires that when [the government] seeks to terminate [a protected] interest . . . it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective.'" *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 570 n.7, 92 S. Ct. 2701, 2705 n.7 (1971)) (alterations in original). "[P]rocedural due process rights are only violated when a protected liberty or property interest is denied without adequate hearing." *Id.*

Plaintiffs contend that they "have a property interest in receiving DBE certification[]" because "[e]ach Plaintiff is eligible to participate in the DBE program." (Pls.' Resp. to Defs.' Mot. Summ. J. 17.) However, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709. While some authority suggests that DBE certification may be a protected property interest in the renewal context, *N. Am. Group, Inc. v. County of Wayne*, 106 F.3d 401, 1997 U.S. App. LEXIS 1715, at *14-15 (6th Cir. Jan. 28, 1997) (table); *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 676-77 (7th Cir. 1987), Plaintiffs have cited no authority and the Court has not found any in support of the notion that Plaintiffs have a property interest in obtaining DBE certification in the first instance.

16

Yet even assuming that initial DBE certification is a protected property interest, Plaintiffs received all the process they were due. The Supreme Court has set forth three factors to consider in evaluating the adequacy of administrative procedures afforded by the government: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976). Plaintiffs allege that they would have earned additional income if they had been granted DBE certification, (Am. Compl. ¶ 62), but they have woefully failed to plead facts or otherwise establish that the process afforded here created a meaningful risk of error. MDOT conducted an on-site review at Plaintiffs' offices and allowed the submission of extensive documentation in support of Plaintiffs' application. Moreover, Plaintiffs were given a written explanation of the specific reasons for denial of their application and were able to appeal this decision to DOT with the assistance of counsel. DOT's decision was based upon a review of the entire administrative record and Plaintiffs were given and availed themselves of an opportunity to supplement the record. Plaintiffs have not identified any deficiency in this process that would tend to result in an erroneous determination. Plaintiffs point to their concerns raised on appeal, but those arguments were in no way related to the process itself. Rather, Plaintiffs disputed the correctness of the decision and took issue with the weight given to certain evidence. Plaintiffs were afforded the procedural protections required by DOT regulations, *see* 49 C.F.R. § 26.83, and this sort of DBE certification process has been held to comport with

17

procedural due process standards. *See N. Am. Group*, 1997 U.S. App. LEXIS 1715, at *15; *Baja Contractors*, 830 F.2d at 679.

Plaintiffs allege that DOT violated its own regulations by engaging in "de novo review of Plaintiffs' applications." (Pls.' Resp. to Defs.' Mot. Summ. J. 17.) While the Court is not entirely certain what Plaintiffs mean, the pertinent regulations provide that DOT affirms or remands a DBE denial appeal based on a review of the entire administrative record. 49 C.F.R. § 26.89(e). If the opinion denying the certification is supported by substantial evidence and is consistent with the regulations' substantive and procedural provisions, DOT must affirm. *Id.* § 26.89(f)(1). Although Plaintiffs appear to disagree with MDOT and DOT's decision, DOT does not appear to have made its decision irrationally or in disregard of the facts in the record.

To the extent Plaintiffs contend that a due process violation exists because Defendants violated federal regulations, the Court disagrees. "[F]ederal regulations cannot themselves create a cause of action; that is a function of the legislature." *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993). Thus, "the statute must be examined to determine if an implied private right of action can be found." *Id.* The regulations at issue were authorized by the Transportation Equity Act for the 21st Century ("TEA-21"), Pub. L. 105-178, Tit. I, § 1101(b)(1), 112 Stat. 107 (1998). *See Adarand Constructors v. Mineta*, 534 U.S. 103, 106, 122 S. Ct. 511, 512 (2001). TEA-21 authorized federal funding of highway projects by states and localities, and there is no indication that Congress intended to create a private right of action for individuals seeking to enforce provisions of the law. In addition to appeal rights, the regulations

implementing TEA-21 provide an administrative remedy for enforcement if a person believes that a recipient of federal transportation funds has failed to comply with the provisions of 49 C.F.R. Part 26. *See* 49 C.F.R. § 26.103. There is no reason to imply a private right of action where such remedies are available. The Court therefore concludes that the alleged regulatory violations do not give rise to a cognizable § 1983 claim.

### 2.   *Equal Protection*

Plaintiffs' equal protection claim is fatally defective. The claim can only be made pursuant to the "class of one" theory due to the fact that Plaintiffs are not themselves women but rather are firms. As such, Plaintiffs must show: (1) intentionally different treatment from others similarly situated and (2) that there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074 (2000) (citations omitted). Plaintiffs have not identified any similarly-situated comparators who were treated differently than Plaintiffs. Thus, to the extent Plaintiffs are attempting to establish an equal protection claim on the ground that Defendants treated their applications differently than other unidentified firms, the claim is not supported by any evidence that could establish discriminatory intent.

In sum, Plaintiffs have the burden of establishing the essential elements of the due process and equal protection violations alleged in the Amended Complaint. The Court finds that Plaintiffs have failed to establish these elements and are accordingly unable to sustain their burden on summary judgment. Therefore, summary judgment in favor of Defendants is appropriate as a matter of law.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiffs' claims against Defendants DOT and Austin must be dismissed as a matter of law. Because these are the only remaining Defendants, Plaintiffs case is dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** and the case is **DISMISSED**.


Dated: February 4, 2013                    s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
**Michael J. Leavitt, Esq.**
**Gregory DeGraff, Esq.**
**Michael J. Dittenber, A.A.G.**
**Laura A. Sagolla, A.U.S.A.**